Michael T. CUTHBERTSON, Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD, Respondent.

Appeal No. 85–2460.

United States Court of Appeals, Federal Circuit.

Feb. 19, 1986.

Victor Schwanbeck, of Schwanbeck, Lane & Present, Tucson, Ariz., for petitioner.

Mary L. Jennings, Associate Gen. Counsel for Litigation, Merit Systems Protection Bd., Washington, D.C., for respondent. With her on brief were Evangeline W. Swift, Gen. Counsel, Marsha E. Mouyal, Reviewer and Stephanie M. Conley, attorney.

Before DAVIS, Circuit Judge, MILLER, Senior Circuit Judge, and NEWMAN, Circuit Judge.

DAVIS, Circuit Judge:

The Merit Systems Protection Board (MSPB or Board) denied attorney fees to petitioner Cuthbertson (who had admittedly prevailed on his claim via a settlement) because, in the Board's view, the MSPB proceeding had played no significant role in that victory. MSPB Docket No. SF315I8210972 ADD. Holding that substantial evidence does not support the MSPB's findings and conclusion, we reverse.

I.

In July 1982 petitioner was demoted by his agency, the Social Security Administration of the Department of Health and Human Services (HHS), from Supervisory Social Insurance Representative, GS–11, to Claims Representative, GS–10, for unsatisfactory performance. That same month, he filed with his agency a formal complaint of race, sex, and handicap discrimination concerning his demotion.[1] In August 1982 he appealed his demotion to the MSPB.

Before the MSPB there was an initial problem whether the Board had jurisdiction over the appeal.[2] The agency argued against jurisdiction because petitioner was said to be still a probationary employee; petitioner urged, on the other hand, that he had completed his probationary period and, in any event, that he fitted within the probationary employee exception for an employee who was bona fide claiming marital status discrimination. After an exchange of papers on these subjects, the MSPB's presiding official (by order dated March 3, 1983) scheduled a hearing for March 31, 1983, on the jurisdictional issue as well as petitioner's marital discrimination claim in connection with jurisdiction; if jurisdiction were upheld, there would be a second hearing on the adverse action taken by the agency in demoting petitioner.

On March 28, 1983, the agency's representative sought from the presiding official a postponement of the March 31st hearing, mainly on the ground that an agreement had been reached between the parties to restore Mr. Cuthbertson with full back pay. Petitioner's attorney insisted that he had not as yet agreed to any such settlement, and the hearing, limited to petitioner's probationary status, was held as scheduled and witnesses testified. The issue of marital status discrimination was to be heard at

---

**1.** We refer to this complaint to his agency as the EEO complaint ("equal employment opportunity" complaint). The EEO complaint was that petitioner had been discriminated against (by his married Hispanic female superior) as a single white "Anglo" male. The geographical area involved was Tucson, Arizona.

**2.** There was also a question whether the Board should act prior to 120 days from the filing of the EEO complaint with the agency.

a later hearing.[3] By order dated August 8, 1983, this second hearing was scheduled for September 7–9, 1983.

Meanwhile, the agency had been discussing an agreed disposition of the EEO complaint with petitioner's counsel. There are no findings as to the initiation of these discussions,[4] but apparently they began in February–March 1983, and tentative agreement on the terms of the settlement (called "Informal Adjustment Agreement to Complaint of Discrimination") was reached shortly before the MSPB hearing of March 31, 1983. This informal agreement was, however, not yet in effect because it had not received all the necessary signatures (including Cuthbertson's and his lawyer's). Under the agreement, (a) petitioner's demotion was cancelled (effective July 26, 1982, the day he had been demoted); (b) he was to be paid back pay; (c) he was to be assigned to his previous position and grade but at a different office; and (d) his personnel file was to be purged of documents relating to the demotion action. Petitioner and his attorney signed the agreement on April 18, 1983, two Government officials signed on March 30, 1983, two others in April 1983, another in June 1983, and the Director of Equal Opportunity for the Department of Health and Human Services (whose concurrence was necessary for the agreement to become effective) on July 11, 1983.

Apparently petitioner and his attorney were not informed of the last signature, and therefore of the effectiveness of the agreement, until the first part of August 1983 (about August 10th). Almost contemporaneously a letter dated August 18, 1983 (and received August 19, 1983) to petitioner's counsel from the Regional Commissioner of the Social Security Administration

strongly stressed that the adjustment agreement banned any discrimination claim before the MSPB (referring to the MSPB "hearing scheduled for next month") and declared that the agency accepted the attorney's recent verbal assurance (on August 17, 1983) that those issues would not be raised before the MSPB.

Shortly thereafter, in a motion received in the Board's regional office on September 6, 1983, the agency moved to dismiss the appeal on the ground that it was now moot in view of the informal adjustment agreement. Petitioner opposed that motion. In an initial decision (September 27, 1983), the presiding official determined that the appeal was moot. The full Board declined review (March 13, 1984).

On March 23, 1984, petitioner filed a request for attorney fees, which the agency opposed. The presiding official determined that the Board had jurisdiction of the adverse action appeal[5] but that petitioner could not be deemed a prevailing party under the Civil Service Reform Act, although he had received almost everything he sought, because his MSPB proceeding was not a significant causal factor in the informal adjustment agreement (or settlement). The full Board again declined review. Petitioner has appealed the denial of attorney fees.

## II.

There is no dispute that petitioner was a prevailing party for fee purposes if he obtained all or a significant part of the relief he sought from the MSPB, and if that relief was causally related to the initiation of the proceeding before the MSPB. The Board so held in *Hodnick v. Federal Mediation and Conciliation Service*, 4 MSPB 431, 434, 4 M.S.P.R. 371, 375 (1980),

---

**3.** If marital discrimination was sufficiently supported, the MSPB would have jurisdiction even though the employee was still a probationer, and the Board could then consider the issues of racial, sexual and handicap discrimination.

**4.** Petitioner insists that (a) the discussions were initiated by the agency's calling to tell petitioner's counsel that Cuthbertson had no case and should dismiss his claim, and (b) after petition-

er's outright rejection of that proposal, the agency made more meaningful suggestions leading eventually to the adjustment agreement.

**5.** The basis was that, though Cuthbertson was still serving a probationary period, he had made a good faith allegation of marital status discrimination, supported by some evidence.

and this court has acknowledged that the first of these two factors is correct, and that the weight of authority supports the Board's position on the second factor of causation (though the court then expressed no opinion on that element). *Sterner v. Department of the Army*, 711 F.2d 1563, 1566 (Fed.Cir.1983). We now agree that, if the relief achieved is significantly due to the initiation of the MSPB proceeding, the "prevailing party" provisions of 5 U.S.C. § 7701(g)(1) (the attorney fees provision in the Civil Service Reform Act) become applicable. Otherwise, an agency could grant all the relief requested, shortly before the MSPB decision had been promulgated, simply to avoid having to pay attorney fees if the MSPB proceeding went to final decision. Conversely, the employee would be impelled to push his case to final decision even though a favorable settlement was earlier offered him.

There is also no dispute that petitioner received in the informal adjustment agreement a very significant part of the relief he asked from the Board. The issue then is whether that relief was causally related, in any significant sense, to the MSPB proceeding which he had brought.

### III.

The presiding official mainly rests her decision that there was no significant relationship between the filing of the MSPB appeal and the adoption of the adjustment agreement on the bare fact that that agreement was initially reached between the EEO sector of the agency and the petitioner before the MSPB hearing of March 31, 1983 (to consider jurisdiction). This is not an adequate ground. For one thing, that too-simple approach skips over the clear fact that, though negotiations had been had, no binding or precise agreement had been reached by that date (and was not actually achieved until July 11, 1983).

More importantly, the MSPB decision neglects the obvious possibility that the settlement (as it was finally made effective) may well have been triggered by and pursued because of the existence of the MSPB proceeding and the agency's desire to forestall that proceeding, the results it might reach, and what it might reveal about the agency. Petitioner points out that he made considerable use of the discovery process available in a MSPB proceeding; this was done both before the March 31, 1983 hearing, and thereafter.[6] As a result, a very large part of petitioner's discrimination case was revealed or sketched for the agency. In addition, the second hearing scheduled for September 7–9, 1983, might have brought into litigation (and public notice) still more facts and situations. The presiding official discounts the possibility that anything was newly learned about petitioner's case because the agency already knew about the evidence submitted and requested by petitioner. That is not necessarily true as to the testimony of witnesses proposed, and, in any event, the fact of the agency's existing knowledge has little to do with the possibility that the agency may well have wanted to avoid the publicity of open MSPB hearings and proceedings.

Contrary to the Board, we must conclude that the agency's desire to avoid further MSPB hearings and proceedings played a significant part in the making of the settlement agreement. The chronology is especially revealing. Three days before the first MSPB hearing on March 31, 1983, the agency told the presiding official that a settlement had been reached even though no signatures had yet been attached to the document and petitioner had not signed it or wholly agreed.[7] Even more curious is the fact that, though the Director of Equal Opportunity of HHS (whose concurrence was the last signature and was admittedly essential to the effectiveness of the agree-

---

6. Petitioner's discovery encompassed the following: (1) supplying the agency with the names of his requested witnesses and the general subjects of their testimony; (2) lists of documents sought; and (3) information requested from agency employees through interrogatories.

7. The first Government signatures were affixed on March 30, 1983, the day before the first MSPB hearing, and petitioner's side did not sign until April 18, 1983.

ment) signed on July 11, 1983, neither petitioner nor his attorney were told of that fact until about a month later. A letter from petitioner's counsel to the agency's representative, dated August 5, 1983, says: "As of this date, we have received no written communique from the EEO with regard to our efforts at settlement." The same letter adds: "No matter the outcome, we do not see any bearing of our settlement discussions with the EEO and our claims before the MSPB"—thus indicating an apparent intent to go forward with the discrimination claim before the Board. Very shortly thereafter, copies of the agreement were first sent to petitioner and to his attorney.

A few days later, a Regional Commissioner's letter to the attorney (dated August 18, 1983 and received August 19, 1983) sent another copy of the agreement. The text of that letter shows most clearly that the agency was much concerned with the possibility that petitioner might try to raise discrimination claims in the MSPB hearing then scheduled for early September. Indeed, it appears from the letter that, the day before (August 17, 1983), the agency had sought from petitioner's attorney (and obtained) verbal assurances that those issues would not be raised at the forthcoming hearing. This special concern on the part of the agency must have been related to the fact that that hearing early in September 1983 (set by order of August

8, 1983) was to be directly related to the discrimination issues.[8]

The record reveals plainly, in our view, that a significant motive, on the part of the agency, in the making of the adjustment agreement was the wish to prevent any further MSPB hearings and proceedings on the discrimination charges, first the hearing of March 31, 1983, and then the one scheduled for early September 1983. Very soon after petitioner's attorney had complained (in his letter of August 5, 1983) about not having been informed of the then status of the settlement agreement, and had signaled his intention to proceed with his discrimination claim at the coming MSPB hearing (soon scheduled for September 7–9, 1983),[9] the agency first sent copies of the agreement and then obtained from petitioner's attorney oral assurances that discrimination issues would not be raised at the September hearing—followed by a letter spelling out and emphasizing this commitment in detail.[10] It seems to us obvious on this record that the coming September MSPB hearing was very much on the agency's mind in August 1983.

■ All this is more than enough to show the causal relation between the MSPB appeal and the relief petitioner received through the adjustment agreement. That agreement was a means of deliberately by-passing the public airing of the dispute before the MSPB.[11] As such, it was

---

**8.** The issue of probationary status had already been ventilated at the hearing of March 31, 1983.

Respondent contends that we cannot consider the Regional Commissioner's letter because it was not introduced into evidence before the MSPB. It appears, however, to have been referred to at a telephone conference of the parties and the presiding official. This is enough for us to consider it part of the record.

**9.** As we have pointed out, this was first ordered by an MSPB Notice of Hearing dated August 8, 1983—after petitioner's attorney's letter of August 5, 1983, quoted *supra,* and immediately prior to the agency's sending copies of the settlement agreement to petitioner and his counsel. The letter from the Regional Commissioner, discussed *supra,* also was sent shortly after the scheduling of the September hearing.

**10.** This concern on the agency's part was probably heightened by the fact that the adjustment agreement's only possible reference to the MSPB proceeding was the ambiguous statement that "acceptance of this resolution obviates all requests for remedial action in association with this discrimination complaint and adequately redresses Mr. Cuthbertson's concerns in this regard. This includes an agreement by Mr. Cuthbertson not to pursue a lawsuit against the agency or its employees relative to the issues contained in this case (file SSA 442 82)."

**11.** There is no substantial evidence to the contrary. Respondent argues that the effort (in August 1983) to make sure that Cuthbertson's lawyer did not raise discrimination matters at the forthcoming September 1983 hearing was simply to make sure that petitioner complied with his undertaking in the adjustment agree-

causally and significantly related to the MSPB proceedings. The result is that Cuthbertson must be considered a "prevailing party" for MSPB attorney fee purposes.

### IV.

For an award of attorney fees it is not sufficient for the petitioner to show that he was a "prevailing party." There must also be a determination that a fee payment "is warranted in the interest of justice." Here the MSPB presiding official did not delve at all into that question or decide it. Petitioner says that the court should itself hold that payment of his fees is warranted by the interest of justice. However, Congress left great discretion in the award of fees to the MSPB (*Sterner v. Department of the Army, supra,* 711 F.2d at 1568–69; *Thomson v. Merit Systems Protection Board,* 772 F.2d 879, 882 (Fed. Cir.1985)), and that tribunal has not had the opportunity to consider that particular question in this case. The record may not be complete and the Board, or the parties, may wish to reopen the record as to factors bearing on the "interest of justice." This strongly suggests that the MSPB should have the right to make the initial determination as to fees. We shall therefore remand that issue, as well as the determination of the amount of fees (if they are to be paid).

REVERSED AND REMANDED.

ment. Even if that were so (*see* footnote 10, *supra*), it would not explain why the agency was so anxious to obtain that commitment and ensure that it was obeyed.